### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES TURK, et al.,** | : | **Case No. 09-CV-381** |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **BRIAN OILER, et al.,** | : | **CORRECTED** |
| | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

This matter is before the Court on Defendants', The Cleveland Clinic Foundation ("the Cleveland Clinic"), Victoria Vance, and Jamie Clemons (referred to collectively as the "Cleveland Clinic Defendants"), Motion for Judgment on the Pleadings as to the Amended Complaint (Doc. 20). This Motion has been fully briefed and is ripe for adjudication.  For the reasons articulated below, the Cleveland Clinic Defendants' Motion for Judgment on the Pleadings is **DENIED**.

I.      **BACKGROUND**

A.      **Relevant Factual Background**[1]

Plaintiffs James and Marybeth Turk reside in Strongsville, Ohio.  James Turk ("Mr. Turk") is a former Strongsville police officer who is employed as a private investigator.  The Defendants can be divided into four distinct groups: (1) the City of Strongsville Defendants; (2) the City of North Royalton Defendants; (3) the Cuyahoga County Defendants; and (4) the Cleveland Clinic

---

[1]The following facts are derived from the Amended Complaint and answers, as well as the parties' submissions, and are construed in the light most favorable to the Plaintiffs, as the Court must when deciding a motion for judgment on the pleadings.

Defendants.[2]  Because this matter is before the Court on the Cleveland Clinic Defendants' Motion, the Court will focus its discussion of the facts on those pertaining to the Cleveland Clinic Defendants' alleged activities.

_____

[2]The City of Strongsville Defendants include Strongsville police officers: Brian Oiler, Adam Rabak, Sergeant Frank Nosal, Sergeant Mike Grywalsky, Lt. Mark Stepanovich, Lt. Mark Fender; Jim Kobak, Deputy Chief of the Strongsville Police Department; Charles W. Goss, Chief of the Strongsville Police Department; John Does Strongsville Nos. 1-2; Thomas P. Perciak, Mayor of Strongsville; and the City of Strongsville, Ohio.  Plaintiffs assert claims against the City of Strongsville Defendants for:

> unlawful seizure, detention, false imprisonment, search, use of excessive and/or unreasonable force against [Mr. Turk], for conspiring to use their positions and offices to invade the privacy of James Turk, to maliciously prosecute him for crimes he did not commit, and for conspiring in the use of their positions and offices to retaliate and seek revenge and to humiliate James Turk for political and private reasons including an interference with his rights to free speech.  Said conspiracy includes the use of these officers' positions to cover up and/or fail to seriously investigate the use of excessive force upon Plaintiff James Turk.

(Doc. 14 at ¶ 1(A).)

The City of North Royalton Defendants include North Royalton police officers: John Trzaska, Kip MacDonald, Sergeant K. Tarase, Lt. John Elek, Captain Harry Kazmir; John Does North Royalton Nos. 1-4; and the City of North Royalton, Ohio.  Plaintiffs claims against the City of North Royalton Defendants are similar to their claims against the City of Strongsville Defendants.

The Cuyahoga County Defendants include: Bill Mason, Cuyahoga County Prosecutor; and John Does County Nos. 1-4.  Plaintiffs allege that the Cuyahoga County Defendants used their positions and office to invade Plaintiffs' privacy rights, "to maliciously prosecute James Turk for crimes that he did not commit, and to interfere with his right to free speech."  (Doc. 14 at ¶ 4(A).)

The Cleveland Clinic Defendants include: Cleveland Clinic Foundation; Jamie Clemens; Vicky Vance; and Cleveland Clinic John Does Nos. 1-2.  Plaintiffs allege that the Cleveland Clinic Defendants: (1) conspired with the other Defendants, and were joint actors or were coerced into releasing Plaintiffs' confidential medical information, making their conduct state action; and (2) violated Plaintiffs' privacy rights under Ohio when they responded to the grand jury subpoena.

2

### 1.     The Incident on February 19, 2007

The events precipitating this matter occurred on February 19, 2007, and began when Mr. Turk's vehicle ran out of gasoline in North Royalton while he was driving home to Strongsville. (Doc. 14 at ¶ 29.)  At the time, Mr. Turk was working as a private investigator for the Cuyahoga County Court of Common Pleas.  (*Id*.)  As a result of his employment, and for safety purposes, Mr. Turk was carrying a gun he had purchased from Defendant Strongsville Police Chief Charles Goss in 1989.  (*Id*.)  Mr. Turk alleges that the gun was stored in his vehicle and was unloaded.  (*Id*.)

Mr. Turk alleges that he sought the assistance of the North Royalton police department which, in turn, enlisted the help of the Strongsville police department.  (*Id*. at ¶ 30.)  When one of the officers began searching his vehicle without permission, Mr. Turk asked if he was under arrest. (*Id*. at ¶ 31.)  Informed that he was not under arrest, Mr. Turk began walking away from his vehicle, at which point he alleges that he was attacked, handcuffed, detained, and searched by the officers. (*Id*.)  According to Mr. Turk, the officers forced him to tell them that he had an unloaded gun in the vehicle and proceeded to remove the gun from the vehicle.  (*Id*.)  Mr. Turk was subsequently released from the handcuffs and driven home.  (*Id*. at ¶ 32.)  Mr. Turk alleges he was not permitted to retrieve his personal property which had been taken by the officers.  (*Id*. at ¶ 33.)

### 2.     The Grand Jury Subpoena

On March 27, 2007, the Cleveland Clinic's Office of General Counsel received a grand jury subpoena issued by the Cuyahoga County Court of Common Pleas.  The subpoena requested that the Cleveland Clinic:

> Provide the medical records to include but not be limited to drug and alcohol counseling and mental issues regarding James G. Turk, D.O.B. 6/16/1957, [SSN omitted], who was seen by Dr. Nicholas Davis, Dr. Fred Jorgensen, and Dr. Pozuelo. This subpoena may be satisfied by forwarding requested records to Det. Brian Oiler, Strongsville Police Department, 18688 Royalton Road, Strongsville, Ohio 44136.

(Doc. 20-6.)

It is undisputed that the Cleveland Clinic Defendants provided medical records in response to the grand jury subpoena. (Doc. 16 at ¶ 36.) Plaintiffs allege that the requested records were provided directly to Defendant Oiler. In preparing its response, the Cleveland Clinic discovered that two of the three medical providers listed on the subpoena – Drs. Nicholas Davis and Fred Jorgensen – did not provide medical treatment to Mr. Turk. (Doc. 16-2.)

### 3.    Defendant Brian Oiler

Several of the claims in the Amended Complaint stem from or relate to Defendant Oiler's alleged conduct. At all times relevant to the Amended Complaint, Defendant Brian Oiler was employed as a police officer with the Strongsville Police Department. Plaintiffs allege that, on or about July 25, 2005, their son was involved in an altercation with a personal friend of Defendant Oiler. (Doc. 14 at ¶ 27.) This altercation led to a lawsuit against Defendant Oiler's friend: *James Turk, et al. v. Namar Fritz*, Case No. CV 06 596949, in the Cuyahoga County Court of Common Pleas. (*Id*.)[3] Plaintiffs allege that, during the incident on February 19, 2007, one of the officers at the scene – Defendant Fender – "reminded the other Defendants present of Plaintiff's lawsuit against Defendant Oiler's friend, Namar Fritz." (*Id*. at ¶ 32.)

In April 2007, after the grand jury issued the subpoena to the Cleveland Clinic, Mr. Turk discovered that Defendant Oiler had contacted one of Mr. Turk's medical providers. (Doc. 14 at ¶ 41.) Mr. Turk subsequently contacted Defendant Oiler to ascertain the reason why he was contacting his health care provider. (*Id*.) It appears, based on the allegations in the Amended Complaint, that Mr. Turk's conduct in contacting Defendant Oiler led to Mr. Turk's indictment, on or about

---

[3]Mr. Turk filed the lawsuit on behalf of his son, who was a minor.

4

September 18, 2007, on two counts of intimidation of Defendant Oiler.  (*Id*. at ¶ 42.)  This indictment initiated a separate and independent criminal case against Mr. Turk before the Cuyahoga County Court of Common Pleas.  (*Id*.)  It was not until sometime in April 2008 that Mr. Turk discovered the full extent of the medical records sought and obtained by Defendant Oiler.  (*Id*.)

According to Plaintiffs, Defendant Oiler obtained the names of the three (3) specific medical providers included in the grand jury subpoena from the Cleveland Clinic Defendants <u>before</u> the subpoena was issued. (Doc. 14 at ¶ 38.) Mr. Turk did not authorize the Cleveland Clinic Defendants to provide his medical records to Defendant Oiler.  (*Id*. at ¶ 41.)  Nor did Mr. Turk give Defendant Oiler permission to discuss his records or course of treatment with any of his medical providers. (*Id*.)  Defendant Oiler testified that he secured the medical records to investigate Mr. Turk for an assault upon Defendant Rabak which had allegedly taken place on February 19, 2007.  (*Id*. at ¶ 39.) Plaintiffs allege that no such assault took place.  (*Id*.)

### 4.    The State Court Indictment

On June 6, 2007, James Turk was indicted, in connection with the February 19, 2007 incident, for carrying a concealed weapon in violation of O.R.C. § 2923.12 and for having a weapon while under disability in violation of O.R.C. § 2923.13.  Section 2923.13 provides, in part, that "no person shall knowingly acquire, have, carry, or use any firearm" if "[t]he person is drug dependent, in danger of drug dependence, or a chronic alcoholic." O.R.C. § 2923.13(A)(4).

### B.    Procedural History

### 1.    State Court Proceedings

In the state court criminal action initiated in 2007 before Judge Jose A. Villanueva of the Cuyahoga County Court of Common Pleas, Mr. Turk filed a Motion for Treatment in Lieu of Conviction in which he indicated that he: (1) is drug dependent or in danger of becoming drug

dependent; and (2) is presently participating in the Cleveland Clinic partial hospitalization treatment program (Mondays through Fridays 8 a.m. to 8 p.m.).  (Doc. 20-5.)

On November 20, 2008, Mr. Turk filed a Motion to Dismiss; or in the Alternative, a Motion to Remove the Prosecutor for Misconduct and Appoint a Special Prosecutor.  (Doc. 20-6.)  In this Motion, which was directed primarily at the weapons under disability count, Mr. Turk argued that his privacy rights were violated when the Strongsville Police Department received illegally subpoenaed confidential medical records from the Cleveland Clinic.  (Doc. 20-6 at 3-4.)  In a Journal Entry dated November 21, 2008, Judge Villanueva denied Mr. Turk's Motion to Dismiss, and several other motions, without a written opinion.  (Doc. 20-7.)

On or about November 21, 2008, the prosecutor dismissed the weapon under disability charge and Mr. Turk proceeded to trial on the sole remaining charge – carrying a concealed weapon.  (Doc. 14 at ¶ 35.)  On or about November 24, 2008, the jury found Mr. Turk not guilty of carrying a concealed weapon.  (*Id*.)

### 2.    **Federal Court Proceedings**

On February 18, 2009, Plaintiffs James and Marybeth Turk filed a complaint against the City of Strongsville Defendants, the City of North Royalton Defendants, the Cuyahoga County Defendants, and the Cleveland Clinic Defendants alleging violations of Ohio common law, federal law, and their constitutional rights, stemming from Defendants' actions during the February 19, 2007 incident and subsequent conduct in obtaining privileged medical records in violation of Plaintiffs' privacy rights.  (Doc. 1.)  On March 26, 2009, the Cleveland Clinic Defendants filed an answer stating that all claims against them should be dismissed because the only allegations against them relate to their appropriate response to a valid state court grand jury subpoena.  (Doc. 6.)  Subsequently, on April 3, 2009, the Cleveland Clinic Defendants filed a Motion for Judgment on the

6

Pleadings.  (Doc. 9.)

At the Case Management Conference held on April 23, 2009, the Court ordered the Plaintiffs to file an Amended Complaint for purposes of clarifying the factual and legal bases of the claims against each Defendant in each of the Counts of the Complaint.  (*See* Doc. 13 at ¶ 15.)  The Court further noted that the Cleveland Clinic Defendants' Motion for Judgment on the Pleadings was termed as moot without prejudice, subject to re-filing after the Amended Complaint was filed.  (*Id.*)

On May 22, 2009, Plaintiffs filed an Amended Complaint asserting seven (7) counts against the four groups of Defendants.  (Doc. 14.)  The primary allegations against the Cleveland Clinic Defendants are set forth in the Second and Third Counts of the Amended Complaint.  Count Two alleges that the Cleveland Clinic Defendants violated 42 U.S.C. § 1983 when they "breached the threshold of state action" and conspired with other Defendants to release Plaintiffs' private medical records in violation of Plaintiffs' privacy rights under the First Amendment.  (Doc. 14 at ¶¶ 23, 55, 75-76, 78-79.)  Specifically, Plaintiffs allege that the Cleveland Clinic Defendants "are state actors by their willing participating in a joint action with the government Defendants or they were coerced by the government Defendants to invade Plaintiffs' privacy rights."  (Doc. 36 at 2.)  Count Three alleges that the Cleveland Clinic Defendants invaded Plaintiffs' privacy rights under Ohio common law and acted negligently in their unauthorized disclosure of Plaintiffs' medical information.  (Doc. 14 at ¶¶ 91-92.)

After filing their Answer to the Amended Complaint (Doc. 16), the Cleveland Clinic Defendants filed a Motion for Judgment on the Pleadings as to the Amended Complaint (Doc. 20), arguing that: (1) they were required to respond to the grand jury subpoena and cannot be held liable for any claims arising from their response; and (2) Plaintiffs' arguments relating to the legality of the grand jury subpoena and the alleged violation of their privacy rights are barred by the doctrine

of collateral estoppel because Mr. Turk litigated the exact same issues in his state criminal proceeding.  (Doc. 20-1.)[4]  On September 25, 2009, Plaintiffs filed a Memorandum in Opposition to the Motion for Judgment on the Pleadings.  (Doc. 36.)  The Cleveland Clinic Defendants filed a Reply in Support on October 9, 2009 (Doc. 45) and Plaintiffs sought, and obtained, leave to file a Response to the Cleveland Clinic Defendants' Reply in Support.  (Doc. 46.)

## II.     STANDARD OF REVIEW

The standard for a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the same as the standard applicable to a motion to dismiss under Rule 12(b)(6).  *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).  The purpose of a motion under either rule is to test the sufficiency of the complaint – not to decide the merits of the case.

It is well-established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim.  *See Myers v. Delaware Co.*, No. 2:07-cv-844, 2009 U.S. Dist. LEXIS 98143, *6 (S.D. Ohio Oct. 22, 2009).  Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations.  *Id*.  The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949; *see also Bell Atlantic Corp.*

---

[4]The Cleveland Clinic Defendants' motion does not address any other issues raised by Plaintiffs' allegations, including Plaintiffs' claim that the Cleveland Clinic Defendants can be classified as state actors under § 1983 by virtue of their conduct.

*v. Twombly*, 550 U.S. 544, 555 (2007)("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is <u>plausible</u> on its face." *Twombly*, 550 U.S. at 570 (emphasis added). The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "its stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citing *Twombly*, 550 U.S. at 557). Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

A district court considering a motion for judgment on the pleadings must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950. In sum, the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. *See* Fed.R.Civ.P. 12(c). The court can also consider: (1) any documents

9

attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.  *Whittiker v. Deutsche Bank National Trust Co.*, 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

## III.    ANALYSIS

In Counts Two and Three of the Amended Complaint, Plaintiffs allege that the Cleveland Clinic Defendants: (1) released Plaintiffs' confidential medical information in response to the grand jury subpoena in violation of their duties set forth in O.R.C. § 2317.02 and Plaintiffs' common law rights of privacy; and (2) conspired with the other Defendants in a variety of ways, including providing information to Defendant Oiler prior to the issuance of the subpoena.

The Cleveland Clinic Defendants present three primary arguments in support of dismissal pursuant to Rule 12(c).  First, they argue that Plaintiffs' are barred from relitigating the validity of the grand jury subpoena and alleged violations of their privacy rights because the exact same issues were raised in Mr. Turk's prior criminal case by way of a motion to dismiss which was denied by the state court judge.  Accordingly, the Court must decide, as an initial matter, what preclusive effect, if any, should be given to this prior state court ruling, particularly in light of the fact that the prosecutor dismissed the weapon under disability charge prior to trial.  Second, the Cleveland Clinic argues that it cannot be held liable for responding to a valid grand jury subpoena.  Third, the Cleveland Clinic asserts that, even if Defendant Oiler obtained the names of certain medical providers from the Clinic prior to the issuance of the subpoena, such disclosure is not a violation of

10

Plaintiffs' privacy rights because the names of medical providers are not considered privileged under Ohio law.

For the reasons discussed below, the Court finds that the doctrine of issue preclusion does not preclude Plaintiffs from asserting their invasion of privacy claims against the Cleveland Clinic Defendants because the relevant issues were not "actually litigated" in the prior state court proceeding. The Court further finds that, at this stage, the Cleveland Clinic Defendants are not entitled to judgment as a matter of law with respect to their conduct in responding to the grand jury subpoena because there is neither a statutory exception permitting disclosure nor a countervailing interest outweighing Plaintiffs' privacy rights. Finally, the Court finds that the Cleveland Clinic Defendants cannot be liable for disclosing the names of Plaintiffs' medical providers prior to issuance of the subpoena because the identity of medical providers, in and of itself, is not privileged.

### A.    Plaintiffs' Claims Against the Cleveland Clinic Defendants Are Not Barred By Collateral Estoppel.

The Cleveland Clinic Defendants devote a substantial portion of their briefing to arguing that Plaintiffs' claims are barred by the doctrine of collateral estoppel. Specifically, the Cleveland Clinic contends that, under Ohio's collateral estoppel law, Mr. Turk had a full and fair opportunity to litigate his claim regarding the legality of the grand jury subpoena and the alleged violation of his privacy rights in the form of his motion to dismiss in the state criminal action. (Doc. 20-1 at 9.) In the motion, which focused primarily on the weapon under disability charge, Mr. Turk argued that his medical records were illegally sought and obtained from the Cleveland Clinic via grand jury subpoena.

In response, Plaintiffs argue that application of issue preclusion would be inappropriate here because the prosecutor dismissed the weapon under disability charge prior to trial, rendering issues

11

relating to the release of Mr. Turk's private medical records moot.  Given this procedural posture in the state case, Plaintiffs argue that the issue Mr. Turk raises here was not actually litigated there. (Doc. 36 at 19-20.) Plaintiffs further argue that Mr. Turk could not assert his § 1983 claims and privacy claims against the Cleveland Clinic Defendants in the state court criminal proceeding, and that the issues raised in the state criminal trial, whether litigated or not, were simply not the same as those raised here.

It is well-established that a state court judgment must be given the same preclusive effect in federal court that it would be given in state court.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738. The Supreme Court has held that issues decided in a state court criminal proceeding may preclude relitigation of the same issues in a subsequent § 1983 action.  *Allen v. McCurry*, 449 U.S. 90, 102 (1980); *Donovan v. Thames*, 105 F.3d 291, 293 (6th Cir. 1997).

Courts distinguish between two types of preclusion claims: issue preclusion and claim preclusion.[5]  *Migra*, 465 U.S. at 77 n. 1.  Issue preclusion refers to "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Id*.; *Bilali v. Gonzales*, 502 F.3d 470, 474 (6th Cir. 2007)(quoting *Migra*, 465 U.S. at 77 n.1).  Claim preclusion refers to "the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."  *Migra*, 465 U.S. at 77 n.1.  In

---

[5]Plaintiffs confuse issue preclusion with the doctrine of claim preclusion: "Plaintiffs Mr. and Mrs. Turk obviously could not have raised their tort action or their Section 1983 action as a separate cause of action in the state court criminal proceeding and, as such, their claims before this Court cannot be barred by claim preclusion."  (Doc. 36 at 18.) The Cleveland Clinic Defendants do not assert that Plaintiffs should have previously litigated their § 1983 claims, but rather that the primary issue critical to that claim has been previously litigated and decided adversely to Plaintiffs.

the present case, the Cleveland Clinic Defendants rely exclusively on the principle of issue preclusion, also known as collateral estoppel, to argue that Mr. Turk should not be able to relitigate the legality of the grand jury subpoena and the alleged violation of his privacy rights since the state court denied his motion to dismiss based on identical claims.

When a party asks a federal court to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered to determine if, and to what extent, the prior judgment should be given preclusive effect. *In re Fordu,* 201 F.3d 693, 703 (6th Cir. 1999); *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005)(citing *Migra*, 465 U.S. at 81). Because Mr. Turk's state criminal proceedings took place in Ohio, this court must consult Ohio's collateral estoppel law to determine whether the state court's decision has a preclusive effect.

In Ohio, collateral estoppel, or issue preclusion, precludes the relitigation of an issue which was fully litigated and determined in a prior suit. *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994); *MetroHealth Med. Ctr. v. Hoffmann-Laroche, Inc*., 685 N.E.2d 529, 533 (Ohio 1997). Under Ohio law,

> [t]he doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

*Knott v. Sullivan*, 418 F.3d 561, 567-68 (6th Cir. 2005)(quoting *Boone v. Spurgess*, 385 F.3d 923, 927 n.4 (6th Cir. 2004)); *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (2006). The purpose of collateral estoppel is to conserve judicial resources, protect litigants from the expense of multiple lawsuits, and to foster certainty and reliance in legal actions. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

13

Therefore, contrary to Plaintiffs' assertions, an issue conclusively determined in a criminal proceeding may have a preclusive effect in a later civil case.  *See Frank v. Simon*, No. L-06-1185, 2007-Ohio-1324, ¶ 14 (Ohio Ct. App. 2007).  As a general rule, however, Ohio courts "frown upon the use of criminal proceedings to estop parties in subsequent civil proceedings." *Boone v. Spurgess*, 385 F.3d 923, 927 n.4 (6th Cir. 2004); *see also Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005)(declining to give preclusive effect to a state court suppression order in a subsequent § 1983 action).

A party asserting collateral estoppel must show that:

(1)     The party against whom estoppel is sought was a party or in privity with a party to the prior action;

(2)     There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(3)     The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

(4)     The issue must have been identical to the issue involved in the prior suit.

*Monahan v. Eagle Picher Indus., Inc*., 486 N.E.2d 1165, 1168 (Ohio Ct. App. 1984); *Dye v. City of Warren*, 367 F.Supp.2d 1175, 1184 (N.D. Ohio 2005).  The party asserting that issue preclusion should apply bears the burden of demonstrating that each element has been satisfied.  *Knott*, 418 F.3d at 568 (citing *Goodson v. McDonough Power Equip., Inc*., 443 N.E.2d 978, 985 (Ohio 1983)).

For the reasons discussed below, the Court finds that Plaintiffs' § 1983 invasion of privacy claims are not precluded by the denial of Mr. Turk's motion to dismiss in the state court criminal proceeding.

**1.     The Issues Relating to the Subpoena and Alleged Violation of Plaintiffs'
         Privacy Rights Were Raised in the State Court Case.**

It is beyond dispute that the issues Mr. Turk raised in his state court criminal case relating

14

to the grand jury subpoena and the unauthorized release of his medical records are identical to the issues raised in the present matter – i.e., that the Cleveland Clinic Defendants were not authorized to release his privileged medical records.   In fact, Plaintiffs admit in their Memorandum in Opposition that  the conduct relating to the grand jury subpoena in the state court action "is the same conduct alleged in the case before this Court."  (Doc. 36 at 19.)[6]

As previously indicated, in the state criminal proceeding, Mr. Turk filed a motion to dismiss, focused primarily on the weapon under disability charge, in which he alleged that privileged medical records were illegally sought and obtained from the Cleveland Clinic by grand jury subpoena.  Specifically, Mr. Turk argued that all documents received from the Cleveland Clinic in response to the subpoena violated his right to privacy and his "doctor/patient relationship."  (Doc. 20-6 at 4, 7.)  Similarly, in the present case, Plaintiffs allege that the Cleveland Clinic Defendants violated Plaintiffs' right to privacy when it disclosed private medical information in response to the grand jury subpoena.[7]

Accordingly, the Court finds that the issue which is pivotal to a resolution of the Cleveland

---

[6]Plaintiffs attempt to distinguish the issues raised in state court from those asserted here by looking to the remedy sought in each action.  (Doc. 36 at 19).  Specifically, Plaintiffs claim that, in the state criminal case, Mr. Turk argued that the weapon under disability claim should be dismissed because the medical records allegedly supporting the charge were obtained by the prosecutor unlawfully.  (*Id*.)  In this case, Plaintiffs seek damages against the Cleveland Clinic Defendants on the basis that they breached Plaintiffs' privacy rights in releasing the medical records.  (*Id*.)  If an issue is fully and fairly litigated in state court, a party may be precluded from relitigating that dispute, regardless of the legal theories asserted in the two cases.  *See Allen*, 449 U.S. at 94 ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").  The Court finds that the critical issue raised in both cases is the same: whether Plaintiffs' privacy rights were violated by the unauthorized release of medical records in response to the grand jury subpoena.

[7]As discussed in greater detail below, the Amended Complaint alleges that the Cleveland Clinic Defendants did more than merely respond to the grand jury subpoena.

Clinic Defendants' current motion – whether Plaintiffs' privacy rights were violated by virtue of the Cleveland Clinic's response to the grand jury subpoena – is identical to the issue raised by Mr. Turk in his motion to dismiss in the state criminal case.

>    **2.     The Invasion of Privacy Issue was Neither Actually and Directly Litigated in the State Court Action Nor Necessary to the Final Judgment Rendered.**

Plaintiffs argue that the issue of whether the medical records were obtained improperly and in violation of their privacy rights was not *actually litigated* in the state court action because the prosecutor dismissed the weapon under disability charge prior to trial.  (Doc. 36 at 19-20.)  Beyond making a blanket assertion that Mr. Turk had an opportunity to litigate this issue in the form of his motion to dismiss, the Cleveland Clinic Defendants do not provide any substantive analysis with respect to this element of the collateral estoppel test.

Ohio courts have indicated that a "prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson*, 443 N.E.2d at 985.  In other words, Ohio law requires that the rejected claim be "essential" to the state court's judgment. *Fuller v. Cuyahoga Metro. Housing Auth.*, No. 1:06cv2093, 2008 U.S. Dist. LEXIS 8730, *42 (N.D. Ohio Feb. 6, 2008) (citing *McKinley*, 404 F.3d at 429.)  As long as a party had a "full and fair opportunity to litigate" the issue, a federal court can collaterally estop that party from relitigating a constitutional issue in a § 1983 action. *Allen*, 449 U.S. at 101, 103-04.

In certain circumstances, courts have found that a state court decision denying a motion to dismiss does not preclude a plaintiff from raising the same issue in a subsequent civil case asserting, among other things, § 1983 violations.  *See Dowell v. City of Troy*, No. 91-CV-75408, 1993 U.S. Dist. LEXIS 6868, *7 (E.D. Mich. Jan. 22, 1993) (noting that "the state court's finding that the

prosecution had made out a prima facie case is not necessarily a finding of probable cause" and therefore "plaintiff did not have a full and fair opportunity to litigate this issue"). Similarly, the Sixth Circuit has declined to give preclusive effect to a state court decision denying a motion to suppress. *Knott*, 418 F.3d at 568.

Moreover, as a general rule, an order denying a motion to dismiss is not a final appealable order. *Polikoff v. Adam*, 616 N.E.2d 213, 215 (Ohio 1993). Nor is such an order a "judgment" which amounts to a disposition of the case. *State v. Shaffer*, No. 87552, 2006-Ohio-5563, 2006 Ohio App. LEXIS 5550, ¶ 13. In *Shaffer*, the court noted that "an order denying a motion to dismiss does not determine the action, nor does it foreclose the possibility of relief in the future." *Id*. at ¶ 21. As a result, the court found that the trial court's orders denying a motion to dismiss did not conclusively "determine the action or necessarily prevent a judgment" in the future. *Id*. at ¶ 22.

In the state court proceeding, Judge Villanueva denied Mr. Turk's motion to dismiss the two charges against him. (Doc. 20-7.) It is undisputed that the prosecutor in the state court case dismissed the weapon under disability charge prior to trial. Mr. Turk then proceeded to a jury trial on the only remaining count – carrying a concealed weapon in violation of O.R.C. § 2923.12. He was acquitted on or about November 24, 2008. Therefore, the final judgment on the merits in the prior criminal action was Mr. Turk's acquittal with respect to only the concealed weapon charge.

The issue of whether the medical records were illegally obtained was not actually litigated and was not essential to the jury's finding that Mr. Turk was not guilty with respect to the only remaining charge against him – carrying a concealed weapon. Indeed, because the weapon under disability claim had been dismissed, the court did not hear any evidence on the conduct of the Cleveland Clinic in responding to the grand jury subpoena nor did it render a final decision as to whether the subpoena violated Mr. Turk's privacy rights. It is clear that the state court did not make

17

any final determination regarding whether Mr. Turk's privacy rights were violated.

In their briefing, the Cleveland Clinic Defendants fail to address whether a non-appealable state court ruling on a motion to dismiss can constitute a "full and fair opportunity to litigate" an issue.  Similarly, they do not address whether a decision denying a motion to dismiss can be considered "essential" to an ultimate judgment of acquittal – particularly in light of the fact that the weapon under disability charge was dismissed prior to trial.  *See Fuller*, 2008 U.S. Dist. LEXIS 8730, *42-43 (declining to decide whether collateral estoppel applies where the defendants' brief "does not explain whether a decision denying a motion to suppress can be considered 'essential' to an ultimate judgment of acquittal").

It is clear that Mr. Turk did not have an opportunity to appeal the state court's ruling on the motion to dismiss.  As previously indicated, the denial of the motion to dismiss was not a final appealable order.  Importantly, the mere denial of Mr. Turk's motion to dismiss did not conclusively determine that Mr. Turk's privacy rights were not violated with respect to the grand jury subpoena. After the final judgment was rendered, and Mr. Turk was acquitted, an appeal was rendered moot.

The Court finds that Mr. Turk did not have a full and fair opportunity to litigate the issue of whether his privacy rights were violated by virtue of the grand jury subpoena because the prosecutor dismissed the weapon under disability charge prior to trial.  Because Mr. Turk's invasion of privacy claim was neither actually litigated nor essential to the final judgment in his state court criminal trial, the Court finds that Plaintiffs may raise their  invasion of privacy claims in this action.[8]

---

[8]While the Court need not reach the issue of privity in light of its finding that the issue was not actually litigated in the prior state court proceeding, it is notable that Mrs. Turk was not a party to Mr. Turk's state criminal action.  The Cleveland Clinic Defendants argue that Mrs. Turk can nonetheless be bound by the state court's denial of Mr. Turk's motion to dismiss because she was in privity with her husband.  (Doc. 45 at 2, n. 2.)  It is debatable whether merely being married to an individual named in a criminal case would always satisfy privity requirements.  *See*

18

**B.    The Cleveland Clinic Defendants are Not Entitled to Judgment as a Matter of Law With Respect to Plaintiffs' Invasion of Privacy Claims.**

The Cleveland Clinic Defendants advance two primary arguments to support their conduct in responding to the grand jury subpoena.  First, they contend that Ohio courts do not extend the privilege to records subpoenaed by the grand jury because disclosure to the grand jury is not a public disclosure.  Second, they argue that disclosure was required because there is a countervailing interest in investigating criminal activity.

For the reasons set forth below, the Court finds that the Amended Complaint alleges sufficient facts to state a plausible claim against the Cleveland Clinic Defendants relating to their conduct in producing Plaintiffs' privileged medical records.

**1.    Ohio's Physician-Patient Privilege Statute Does Not Contain an Exception for Disclosure in Response to a Grand Jury Subpoena.**

The Cleveland Clinic Defendants argue that the disclosure of medical records to a grand jury does not violate the physician-patient privilege because the grand jury is conducted in secret.  (Doc. 45 at 7.)[9]  In response, Plaintiffs argue that Ohio's physician-patient privilege does not contain an exception permitting disclosure in response to a grand jury subpoena.  The Court finds Plaintiffs' argument well-taken.

It is well-established that grand jury proceedings are conducted in secret and information

_____

*Union of Needletrades v. Am. Capital Strategies, Ltd.*, 546 F.Supp.2d 546, 556 (S.D. Ohio 2008)(quoting *U.S. v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007)) (noting that a party in privity with the named party can be "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented").  Again, the Court simply does not reach the issue.

[9]While it is true that grand jury proceedings are secret, in this case, Plaintiffs allege that the records requested in the subpoena were sent directly to Defendant Oiler at the Strongsville Police Department.  While the Court does not reach this issue in light of its analysis on others, this fact, if true, could render the Cleveland Clinic Defendants' secrecy arguments irrelevant.

19

provided in the proceedings is kept confidential.  *See In re Klausmeyer*, 265 N.E.2d 275, para. 4 of the syllabus (Ohio 1970)("The investigations and deliberations of a grand jury regarding the commission of offenses must be conducted in secret, and all such proceedings must be legally sealed against divulgence.").  The purpose of the grand jury is to "investigate claims that crimes have been committed and to determine whether to charge an accused in a given case."  *State v. Asher*, 679 N.E.2d 1147, 1150 (Ohio Ct. App. 1996).  While the grand jury can compel the production of documents, privileged materials are exempt from disclosure.  *In re Grand Jury Investigation of Brink*, 42 Ohio Misc.2d 5, 6 (Ohio C.P. 1988).

> **a.     Ohio's Physician-Patient Privilege is Not Preempted by HIPAA.**

As a general rule, an individual's medical records are confidential.  *Hageman v. Southwest General Health Center*, 893 N.E.2d 153, 155 (Ohio 2008).  Under the Health Information Portability and Accountability Act of 1996 ("HIPAA"), a hospital's release of medical records to law enforcement is permitted under certain circumstances.  Indeed, HIPAA specifically authorizes a hospital to release a patient's medical records in response to a grand jury subpoena. 45 C.F.R. § 164.512(f)(1)(ii)(B).

Ohio's physician-patient privilege, however, codified in O.R.C. § 2317.02(B)(1), provides that a physician shall not testify as to "a communication made to the physician . . . by a patient in that relation or the physician's . . . advice to a patient."  The term "communication," as used in § 2317.02(B), includes hospital records "and is sufficiently broad to cover any confidential information gathered or recorded within them during the treatment of a patient at the hospital."  *State v. Russ*, No. CA99-07-074, 2000 Ohio App. LEXIS 2759, *14 (Ohio Ct. App. June 26, 2000).

Ohio courts have found that O.R.C. § 2317.02(B) is more stringent than HIPAA, and therefore is not preempted, because it "prohibits use or disclosure of health information when such use or

disclosure would be allowed under HIPAA."[10]  *Grove v. Northeast Ohio Nephrology Assocs.*, 844 N.E.2d 400, 406-07 (Ohio Ct. App. 2005); *see also Progressive Preferred Ins. Co. v. Certain Underwriters at Llyod's London,* No. 2006-L-242, 2008-Ohio-2508, 2008 Ohio App. LEXIS 2114, ¶ 14 (Ohio Ct. App. May 23, 2008) (finding that "since the privacy requirements of R.C. 2317.02(B)(1) are more extensive than those mandated by HIPAA, it is not preempted by the federal enactment"); *State v. Flanigan*, No. 21460, 2007-Ohio-3158, 2007 Ohio App. LEXIS 2909, ¶¶ 76-77 (Ohio Ct. App. June 22, 2007)(finding that HIPAA does not preempt R.C. § 2317.02(B) because the records sought were "clearly protected individualized identifiable health information").

Thus, while HIPAA allows disclosure of protected health information in response to a grand jury subpoena, O.R.C. § 2317.02(B) permits disclosure only in certain limited circumstances.  *See May v. Northern Health Facilities, Inc*., No. 2008-P-0054, 2009-Ohio-1442, 2009 Ohio App. LEXIS 1195, ¶ 12 (Ohio Ct. App. March 27, 2009)(contrasting HIPAA's privacy regulation, which "allows disclsoure of protected health information in the course of any judicial or administrative proceeding in response to a court order *** by subpoena, discovery request or by other lawful process" with R.C. 2317.02(B)(1) which permits disclosure in specific circumstances); *Gress v. Coshocton Co. Memorial*

---

[10]HIPAA's preemption provision provides that:

A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law.  This general rule applies, except if one or more of the following conditions is met:

***

(b) The provision of state law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

45 C.F.R. § 160.203(b).

*Hospital*, No. 2:07-cv-434, 2009 U.S. Dist. LEXIS 86446, *4 (S.D. Ohio Sept. 8, 2009)(noting that Ohio law "contains stricter provisions conerning the disclosure of information in patient records" and that O.R.C. § 2317.02 allows for the disclosure of otherwise privileged medical information "only in five specific circumstances, none of which are present here").  As a result, HIPAA does not preempt O.R.C. § 2317.02(B).

> **b.  Ohio Courts Have Declined to Create an Exception to O.R.C. § 2317.02(B) Permitting Disclosure in Response to a Grand Jury Subpoena.**

There are certain limited exceptions to the physician-patient privilege set forth in O.R.C. § 2317.02(B).  Specifically, Ohio's statute provides that the privilege does not apply in any criminal action: (1) concerning tests or results of tests that determine the presence of alcohol or controlled substances in the patient's blood; or (2) against the physician.  *See* O.R.C. § 2317.02(B)(1)(c)-(d).[11] The statute also contains an exception allowing law enforcement conducting a criminal investigation to request and obtain from health care providers test results administered to determine the presence or concentration of alcohol or drugs in a person's blood, breath, or urine.  *See* O.R.C. § 2317.02(B)(2)(a).[12]

---

[11]O.R.C. § 2317.02(B) also permits disclosure in the following civil actions: (1) where the patient or guardian gives consent; (2) if a medical claim is filed by the patient; (3) where the action concerns court-ordered treatment or services; and (4) will contests.  *See* O.R.C. § 2317.02(B)(1)(a)-(b), (e).

[12]The statute provides that:

If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them . . . the provider .

The Ohio Supreme Court has "repeatedly and consistently refused to engraft judicial waivers, exceptions, or limitations into the testimonial privilege statutes where the circumstances of the communication fall squarely within the reach of the statute." *In re Wieland*, 733 N.E.2d 1127, 1130 (Ohio 2000). It is well-established that only the legislature, not the courts, has the authority to create additional exceptions to the privilege statute. *Id*. at 1130-31 (finding that "in the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1)" are applicable); *State v. Gonzalez*, 796 N.E.2d 12, 29 (Ohio Ct. App. 2003).

Ohio courts have recognized that "[w]hen the legislature wishes to create an exception to the statutory doctor-patient privilege, it can and will do so." *Gonzalez*, 796 N.E.2d at 29 (citing *State v. Smorgala*, 553 N.E.2d 672 (Ohio 1990)). For example, in *Smorgala*, the court declined to judicially create a public policy exception to the privilege statute "which would allow otherwise clearly inadmissible evidence to be received in 'drunk driving' cases." 553 N.E.2d at 673-74 ("Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy."). In response to *Smorgala*, the legislature amended the privilege statute to include a specific exception permitting law enforcement to obtain test results for alcohol and drugs. *See State v. Meyers*, 767 N.E.2d 739, 747 (Ohio 2001)("In 1993, the General Assembly abrogated the physician-patient privilege in the context of criminal investigations, expressly superceding *Smorgala*. Pursuant to the current version of R.C. 2317.02(B)(1)(b), physicians may be compelled to testify as to the results of such [blood alcohol] tests.").

In a recent Ohio decision cited by Plaintiffs, the Fourth District Court of Appeals specifically

. . shall supply to the officer a copy of any of the requested records the provider possesses.

O.R.C. § 2317.02(B)(2)(a).

23

declined "to judicially create a public policy exception to the privilege statute for grand jury subpoenas." *In re Banks*, No. 07CA3192, 2008-Ohio-2339, 2008 Ohio App. LEXIS 1986 at ¶ 24. In *Banks*, a grand jury subpoena ordered a physician to produce medical records for over fifty patients. *Id*. at ¶ 2.  The physician filed a motion to quash on grounds that producing such records would violate the physician-patient privilege contained in O.R.C. § 2317.02.  *Id*. at ¶ 4.  The court noted that none of the statutory exceptions relevant to criminal actions applied because: (1) the action did not involve tests to determine the presence of alcohol or drugs in a patient's blood; and (2) there was no evidence that the physician engaged in criminal activity.  *Id*. at ¶ 22.  The court held that "because none of the statutory exceptions apply and because we refuse to judicially create a public policy exception, the physician-patient privilege applies."  *Id*. at ¶ 24.

The Cleveland Clinic Defendants argue that, rather than apply the analysis in *Banks*, the Court's analysis should be guided by an earlier decision rendered by the Cuyahoga County Common Pleas Court.  *See Brink*, 42 Ohio Misc.2d 5.  In *Brink*, the court noted that the physician-patient privilege is not absolute, and "does not apply when the public interest supporting disclosure in a criminal case outweighs the interest in enforcing the privilege." 42 Ohio Misc.2d at 6.  The court noted that "society's interest in fair and effective law enforcement is best accomplished by allowing the grand jury to have access to medical records when investigating a criminal matter."  *Id*. at 8. This is particularly true, the court indicated, because the grand jury is secret in nature and, thus, the "patient's interest in preserving the confidentiality of his medical records is protected."  *Id*. at 8-9. The *Brink* court specifically held that "the physician-patient privilege does not extend to medical records subpoenaed pursuant to a grand jury investigation."  *Id*. at 9.

Plaintiffs argue that the Cleveland Clinic's reliance on *Brink* is misplaced because it dealt with blood tests and O.R.C. § 2317.02 was subsequently amended to carve out a specific exception

24

permitting disclosure of otherwise privileged information to determine the presence of alcohol or controlled substances in the blood.  (Doc. 46-1 at 3-4.)(citing O.R.C. § 2317.02(B)(1)(c)).  Plaintiff further cites to *Banks* for the proposition that, in the wake of *Brink*, Ohio courts have refused to create an exception to Ohio's privilege statute for grand jury subpoenas.  *See Banks*, 2008 Ohio App. LEXIS 1986 at ¶ 24.

The Court agrees with Plaintiffs that *Banks* – rather than *Brink* – provides the applicable analysis.  Absent convincing evidence to the contrary, the Court finds that it must apply Ohio's physician-patient privilege statute, which does not contain any exceptions permitting disclosure of otherwise privileged medical information simply because the information is sought via grand jury subpoena.   As was the case in *Banks*, in the case *sub judice*, neither of the statutory exceptions set forth in O.R.C. § 2317.02(B) applies: the medical records at issue were not sought in an action involving tests to determine the presence of alcohol or drugs in Mr. Turk's blood and the underlying criminal action was not against a physician.

Because Ohio courts have refused to judicially create an exception to the privilege statute permitting disclosure in response to grand jury subpoenas, the Court finds that the Cleveland Clinic Defendants are not entitled to judgment as a matter of law on Plaintiffs' claims premised on that statute.  *See Banks*, 2008 Ohio App. LEXIS 1986, at ¶¶ 24-25; *see also Jackson v. Greger*, 854 N.E.2d 487, ¶¶ 12-13 (Ohio 2006)(noting that the Ohio Supreme Court has "consistently rejected the adoption of judicially created waivers, exceptions, and limitations for testimonial privilege statutes"); *Gonzalez*, 796 N.E.2d at 30 (noting that "unless the legislature acts to waive the privilege, it is not for courts to create judicial waivers").

2.    **Public Policy Interests Do Not Outweigh Mr. Turk's Privacy Interests Under the Circumstances at Issue.**

The Cleveland Clinic Defendants also assert that there is a countervailing public policy interest that outweighs Plaintiffs' interests in confidentiality.[13]  Specifically, the Cleveland Clinic argues that the "legitimate countervailing policy is the investigation of criminal activity and cooperation with law enforcement." (Doc. 45 at 5.)  Plaintiffs argue that there was no countervailing interest outweighing their privacy interests in protecting the confidentiality of their medical records. (Doc. 36 at 13.)

> The Ohio Supreme Court has held that,
>
> in the absence of prior authorization, a physician . . . is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or *where disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality.*

*Biddle v. Warren General Hosp.*, 715 N.E.2d 518, 524 (Ohio 1999) (emphasis added).  In *Biddle*, a hospital gave a law firm thousands of patient registration forms which contained information about the medical condition of each patient for the purpose of determining the patient's status as a potential Social Security claimant.  *Id.* at 526-27.  While the court noted that "there may be special situations where the interests of the patient will justify the creation of a privilege to disclose" generally "it is for the patient – not some medical practitioner, lawyer, or court – to determine what the patient's interests are with regard to personal confidential medical information."  *Id.* at 528.  The *Biddle* court held that a "third party can be held liable for inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship."

---

[13]In their briefing, the Cleveland Clinic Defendants blend their discussion of Ohio's privilege statute with their public policy arguments.  Although these issues overlap, the Court separates its discussion of statutory exceptions from the public policy considerations.

26

*Id.*  As a result, the court found that reasonable minds could conclude that the hospital breached its duty of confidentiality.  *Id.*

Some Ohio courts have permitted discovery of otherwise confidential information to further a countervailing interest where the non-party patient's identity is sufficiently protected.  *See Richards v. Kerlakian*, 835 N.E.2d 768, 769 (Ohio Ct. App. 2005)(citing *Fair v. St. Elizabeth Medical Center*, 737 N.E.2d 106 (Ohio Ct. App. 2000)(ordering disclosure of redacted non-party patient's medical records where such records were necessary to establish plaintiff's claim); *State v. McGriff*, 672 N.E.2d 1074 (Ohio Ct. App. 1996)(allowing the use of redacted medical records of non-party patients in criminal proceedings against physician)).  Where a non-party patient's anonymity and privacy cannot be preserved, those courts have found that disclosure of that person's medical information is inappropriate.  *See Grove*, 844 N.E.2d at 407-08.  Importantly, however, in a 2009 Ohio Supreme Court decision, the court disapproved of these prior court decisions which permitted discovery of nonparty patient records as long as redactions were made, noting that *Biddle* "did not create a litigant's right to discover the confidential medical records of nonparties in a private lawsuit."  *Roe v. Planned Parenthood Southwest Ohio Region*, 912 N.E.2d 61, 70-71 (Ohio 2009)(explaining that *Biddle* "addressed the defenses to the tort of unauthorized disclosure of confidential medical information – i.e., the circumstances under which a physician or hospital may release confidential medical records in the absence of a waiver without incurring tort liability").

The Court has not located any cases applying *Biddle*'s "countervailing interest" analysis in situations analogous to the instant case, and the parties have cited none.  Unlike those situations where courts have found that countervailing interests outweigh a patient's interests in confidentiality, in this case, the confidential information requested could not be disclosed in redacted form without

27

any identifying information because Mr. Turk was the target of the investigation.[14]

Again, the Cleveland Clinic Defendants cite to the Cuyahoga Common Pleas Court's decision in *Brink*, which was decided prior to the Ohio Supreme Court's decision in *Biddle*, for the proposition that "society's interest in fair and effective law enforcement is best accomplished by allowing the grand jury to have access to medical records when investigating a criminal matter."  (Doc. 45 at 6, citing *Brink*, 42 Ohio Misc.2d at 5, 8-9).  The *Brink* court cited to and relied upon a 1964 Ohio Supreme Court decision which held that "[a]gainst the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society." *Brink*, 42 Ohio Misc.2d at 6 (citing *State v. Antill*, 197 N.E.2d 548, 551 (Ohio 1964)).  In more recent decisions, Ohio courts have indicated that the balancing test employed in *Antill* – "where the public interest in detecting crime could outweigh the policy considerations of the doctor-patient privilege" – only applies where there are conflicting statutes, not where the balancing is between the privilege statute and a judicially-created policy limiting its application.  *See Gonzalez*, 796 N.E.2d at 29-30 (citing *Smorgala*, 553 N.E.2d 672; *State v. Jones*, 739 N.E.2d 300, 309-10 (Ohio 2000)).[15]

As discussed previously, in this case, there is no statutory privilege permitting disclosure in response to a grand jury subpoena, and Ohio courts have declined to create public policy exceptions

_____

[14]The Cleveland Clinic Defendants suggest that the subpoena "did not identify whether the target of the investigation was the patient, the doctors referenced, the Clinic or some unidentified third party."  (Doc. 45 at 8 n. 3.)  Upon review of the subpoena, the Court disagrees. The subpoena clearly identifies Mr. Turk by date of birth and social security number and specifies that it seeks his medical records, including records concerning his drug and alcohol counseling and mental issues.  (*See* Doc. 20-2.)  There can be little doubt from the face of the subpoena who the "target" of that subpoena was.

[15]In both *Antill* and *Jones*, the balancing was between the physician-patient privilege statute, O.R.C. § 2317.02(B), and the medical personnel reporting statute, now codified at O.R.C. § 2921.22(B).  *Jones*, 739 N.E.2d at 310.

28

to the physician-patient privilege.  In fact, in other contexts, Ohio courts have specifically refused to

create a "law enforcement" exception to privilege statutes.  *See In re Grand Jury Subpoena Duces*

*Tecum Directed to Keeper of Records of My Sister's Place*, No. 01CA55, 2002-Ohio-5600, 2002

Ohio App. LEXIS 5607, ¶ 22 ("In light of our limited role in the public policy context and the

Supreme Court's apparent lack of consistency in this arena, we leave creation of a law enforcement

exception to the privilege created by R.C. 3113.40 [protecting certain confidential information in the

domestic violence context] to others.").

The Cleveland Clinic Defendants argue that the State "had a countervailing interest in having

The Cleveland Clinic cooperate with law enforcement by making sure that complete information was

provided to the grand jury regarding Plaintiff James Turk's drug, alcohol and mental health related

conditions."  (Doc. 20-1 at 7.)  The Cleveland Clinic further argues that, because the grand jury was

investigating Mr. Turk for possessing a weapon under disability, "[s]ociety's interest in having the

grand jury consider the subpoenaed information is evident."  (*Id*.)

The need for investigation of criminal activity and the need for confidentiality in medical

records are *both* important interests to protect.  Indeed, it is widely recognized that "individuals

should be encouraged to seek treatment for medical or psychological conditions, and privacy is often

essential to effective treatment."  *Hageman*, 893 N.E.2d at 157.  Maintaining confidentiality with

respect to medical treatment is a significant interest and "[i]f the right to confidentiality is to mean

anything, an individual must be able to direct the disclosure of his or her own private information."

*Id*.  As the court noted in *Biddle*, generally it is for the patient to decide what his interests are – not

a physician, lawyer, or the court.  *Biddle*, 715 N.E.2d at 528.

In this case, Mr. Turk was not given notice of the grand jury subpoena and therefore did not

have a chance to file a motion to quash the subpoena based on the physician-patient privilege.  In

29

other words, Plaintiffs were deprived of the opportunity to "direct the disclosure" of their own confidential information. *See Hageman*, 893 N.E.2d at 157.[16]

While it may be more efficient for a grand jury to be permitted to obtain an individual's medical records to determine whether he is "under disability" for purposes of a potential weapon under disability charge, giving law enforcement unbridled access to medical records could discourage patients from seeking medical treatment.[17]  As Ohio courts have found, this is ultimately a separation of powers issue: if the Ohio legislature wants to create a law enforcement exception to the physician-patient privilege, it can do so; the courts cannot, however, rewrite unambiguous statutory schemes on policy grounds.  This Court applies Ohio law as it believes the highest court in Ohio would if presented with the issue, and declines to extend the "countervailing interests" doctrine to a case involving the broad disclosure of all medical records of an individual without notice and without any attempt to narrowly tailor the request for confidential information to the scope of the criminal charges. Indeed, the subpoena at issue in this case requested production of "medical records to *include but not be limited to* drug and alcohol counseling and mental issues regarding James G. Turk." (Doc. 20-

---

[16]While Plaintiffs ultimately concede that the Cleveland Clinic Defendants were not required to file a motion to quash the grand jury subpoena, they nonetheless argue that the Cleveland Clinic should have taken some steps to notify Plaintiffs to either: (1) seek authorization for the release of records; or (2) give Plaintiffs an opportunity to take action to protect their privacy interests.  The Cleveland Clinic does not directly address Plaintiffs' notice arguments and instead argues that, because the grand jury is a secret proceeding, disclosure of privileged information is both permitted and required.  (Doc. 45 at 5.)

[17]Surely obtaining Mr. Turk's privileged medical records was not the only way in which law enforcement could investigate whether Mr. Turk was "under disability."  Among other fairly obvious investigatory tools, there is a statutory mechanism available by which law enforcement can submit a written request to a health care provider providing notice that a criminal investigation of a person has begun and requesting copies of records pertaining to test results administered to determine the presence of alcohol or drugs in the person's blood, breath, or urine "at any time relevant to the criminal offense in question."  *See* O.R.C. § 2317.02(B)(2)(a).

6.)(emphasis added).  In addition, Plaintiffs allege, and the Cleveland Clinic Defendants have not refuted, that documents responsive to the subpoena were provided directly to Defendant Oiler – rather than to the prosecutor – suggesting that they were not given to the grand jury in secret as the Cleveland Clinic suggests.

Given these conclusions, the Cleveland Clinic Defendants are not entitled to judgment on the pleadings on Plaintiffs' invasion of privacy claim.

**C.      The Names of Plaintiffs' Health Care Providers Are Not Privileged.**

In both Counts Two and Three of the Amended Complaint, Plaintiffs allege it is clear from the face of the subpoena that the Cleveland Clinic Defendants conspired with the other Defendants to violate Plaintiffs' privacy rights because the subpoena contains the names of three specific health care providers, indicating that the Cleveland Clinic disclosed those names to Oiler, or someone else, well before the subpoena issued.  (Doc. 14 at ¶¶ 75, 91.)  In response, the Cleveland Clinic Defendants do not deny that they communicated with one or more of the other defendants regarding the identity of Mr. Turk's physicians, but argue that inclusion of the names of the medical providers on the grand jury subpoena is of no consequence because the only information necessary to run the search for Mr. Turk's medical records is his date of birth and social security number – both of which were provided on the face of the subpoena.  The Cleveland Clinic further argues that the identity of Plaintiffs' medical providers is not confidential, privileged information.  Finally, the Cleveland Clinic points to the fact that it found no records indicating that two of the three providers listed in the subpoena ever provided treatment to Mr. Turk.[18]

As previously indicated, Ohio's physician-patient privilege protects only "communications"

---

[18]It is unclear at this stage whether these health care providers ever provided treatment to Mrs. Turk.

31

between the health care provider and patient.  *See* O.R.C. § 2317.02(B)(1).  For purposes of the

statute, "communication" means,

> acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient.  A 'communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis.

O.R.C. § 2317.02(B)(5)(a).

Ohio courts have specifically found that the names of health care providers are not subject to

the physician-patient privilege because they do not qualify as "communications" for purposes of

O.R.C. § 2317.02.  *Ingram v. Adena Health Sys.*, 777 N.E.2d 901, 904 (Ohio Ct. App. 2002); *see*

*also May v. Northern Health Facilities, Inc.*, No. 2008-P-0054, 2009-Ohio-1442, 2009 Ohio App.

LEXIS 1195, ¶ 17; *Hudson v. United Services Auto. Assoc. Ins. Co.*, 150 Ohio Misc.2d 23, 34-35

(Ohio C.P.  2008)("While what was said between a physician and his patient may be confidential, the

fact that the physician treated the patient is not protected by the confidentiality provisions of the

Revised Code.").  In *Ingram*, the court noted that a request seeking the identity of health care

providers does not seek privileged communications because it is not asking for disclosure of

something that: (1) the patient communicated to the physician; or (2) the physician communicated

to the patient.  *Ingram*, 777 N.E.2d at 904.  As a result, the court found that the information requested

was not privileged.  *Id*.

Thus, if Defendant Oiler did obtain the names of the three medical providers listed in the

subpoena from the Cleveland Clinic Defendants prior to the issuance of the subpoena, that fact,

standing alone, would not support an invasion of privacy claim.  *See Ingram*, 777 N.E.2d at 904; *May*,

2009-Ohio-1442 at ¶ 17.  Because the identity of health care providers is not privileged, the Court

finds that Plaintiffs' attempts to hold the Cleveland Clinic Defendants liable for disclosing names of certain health providers fails as a matter of law.

This finding, however, does not justify dismissal of either claim asserted against the Cleveland Clinic Defendants because: (1) Count Two of the Amended Complaint asserts additional allegations against the Cleveland Clinic Defendants involving conspiracy, state action, and coercion – none of which are addressed in the Cleveland Clinic's briefing; and (2) as previously indicated, the Court finds that the Cleveland Clinic Defendants are not entitled to judgment as a matter of law with respect to Plaintiffs' state law privacy claims contained in Count Three.  This finding also does not mean that evidence of any such pre-disclosure discussions would be irrelevant to Plaintiffs' conspiracy claim as it relates to the later disclosures of clearly privileged material, only that, *standing alone*, they do not support an invasion of privacy claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' claims against the Cleveland Clinic Defendants are not barred by the doctrine of collateral estoppel.  The Court further finds that the Amended Complaint alleges sufficient facts to state a plausible claim against the Cleveland Clinic Defendants for providing Plaintiff James Turk's privileged medical records in response to the grand jury subpoena, without authorization from Mr. Turk to do so.

Accordingly, the Cleveland Clinic Defendants' Motion for Judgment on the Pleadings as to the Amended Complaint (Doc. 20) is **DENIED**.


**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**